## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
OMID NODOUSHANI,              :
                             :
         Plaintiff,          :
    v.                       :    Civ. No. 3:08CV00561(AWT)
                             :
SOUTHERN CONNECTICUT         :
STATE UNIVERSITY,            :
                             :
         Defendant.          :
-----------------------------x
```

### RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Omid Nodoushani ("Nodoushani"), brought this action against the defendant, Southern Connecticut State University ("SCSU"), alleging employment discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60(a) et seq. ("CFEPA"). Nodoushani also brings a claim for intentional infliction of emotional distress. SCSU has moved for summary judgment on all claims, and has also moved to strike several statements submitted in the plaintiff's Local Rule 56(a)(2) statement. SCSU's motion to strike is being granted in part and denied in part, and SCSU's motion for summary judgment is being granted.

## I.   FACTUAL BACKGROUND

Nodoushani is an Iranian-born Muslim male of Iranian descent. He was hired by SCSU, a branch of the Connecticut State

-1-

University System, in 2000, received tenure in 2003, and served as the Director of the Master of Business Administration ("MBA") Program in SCSU's School of Business from 2000 until 2008. During this time, Nodoushani received various awards and commendations from SCSU in recognition of his work for the university.

On June 7, 2005, Nodoushani turned in a Connecticut State University travel authorization form for the period from June 22, 2005 to June 26, 2005.  Nodoushani contends and SCSU disputes that he attended the Eighth Annual Ethics and Technology Conference at St. Louis University's Emerson Center for Business Ethics in St. Louis, Missouri during this time.  On July 6, 2005, Nodoushani submitted an employee travel voucher for the conference, claiming reimbursement for approximately $1,200 in expenses.

On September 20, 2005, Nodoushani was arrested by university police and charged with larceny for filing a fraudulent reimbursement form.  SCSU delayed the approval of Nodoushani's travel vouchers for other conferences until the Connecticut Superior Court dismissed the charges on July 18, 2006.

On October 26, 2006, Nodoushani filed a complaint with the Equal Employment and Opportunity Commission ("EEOC") and the Connecticut Commission on Human Rights and Opportunities ("CHRO") alleging illegal discriminatory practices by SCSU.  He also filed

an internal discrimination complaint with SCSU on January 26, 2007.  The basis for the internal complaint was an e-mail Radha R.M. "Murty" Narumanchi ("Narumanchi") sent to the interim dean of the School of Business, Henry Hein ("Hein") on January 3, 2007.  The e-mail included the following language:

> Now you can see the attitude of Omid once again.  He is back at his usual dirty game. Apparently, he thinks he is above the law (some one tells me that the former dictator Saddam Hussein used to think he was the Supreme Leader, till his end, a few days ago) and is, therefore, not accountable to anyone . . . There is definitely a need, it occurs to me, for Omid to go back to school to understand thoroughly the laws of the USA and not go by some foreign laws to which he may have become accustomed before he set his foot on the soil of the USA.

(Def.'s Mot. for Summ. J. (Doc. No. 55) ("Def.'s S.J. Mot."), Ex. 3 - Excerpts from deposition of Omid Nodoushani, Vol. I, dated June 3, 2010) (Doc. No. 55-7), Dep. Ex. 47.)

In February 2008, Provost Selase Williams ("Williams") and SCSU's Academic Faculty Senate revised SCSU's policy for faculty appointments to directorships.  Under the previous policy, SCSU administrators appointed faculty members to administrative roles for unspecified periods of time.[1]  Under the terms of the new policy, however, "[a]n appointment should not exceed two (2)

---

[1]For example, Nodoushani had served as Director of the MBA Program since 2000, *i.e.*, for 8 years.

years, without a re-advertisement process."  (Def.'s S.J. Mot.,
Ex. 8 - Affidavit of Dr. Selase Williams, dated Nov. 29, 2010,
with attachments (Doc. No. 55-12) ("Williams Aff."), Attachment C
- Academic Affairs Policy, Faculty Reassignment to Administrative
Rules adopted by the Academic Faculty Senate in February 2008)
("New Policy.")  Under the New Policy, any faculty member holding
a re-advertised appointment "should be allowed to be reconsidered
for the position, as long as that assignment would not negatively
impact the academic program of his/her home department."  (Id.)

        SCSU contends that it created its new directorship policy to
provide all faculty with an opportunity to apply for
administrative roles.  In a letter sent to at least eight faculty
members affected by the New Policy, including Nodoushani,
Williams stated that the New Policy was being adopted "[i]n the
spirit of fairness and transparency" to avoid "the perception
that some have received special treatment," since under the
previous policy "the opportunity for others to serve in such
capacities were [sic] precluded."  (Williams Aff., Attachment D-1
through D-8 - Copies of interdepartmental memorand[a] sent to
individuals affected by the new academic affairs policy) ("Policy
Letter.")

        Nodoushani received the Policy Letter in his capacity as
Director of the MBA Program, and so he was aware that under the
New Policy, university directorships were to be re-advertised

-4-

every two years and that he could reapply for his directorship. But when the MBA Director position was re-advertised in May 2008, Nodoushani did not apply.  The position was filled by another professor, Abdel Sayed.

In the spring of 2009, the Department of Management held an election to select a new chairperson.  Nodoushani received eight of the thirteen faculty members' votes.  The chair of the personnel committee recommended Nodoushani to Hein.  In response, Hein wrote to the personnel committee, "I have received your letter of March 18 concerning your selection for the position of departmental chairperson.  I do not accept your recommendation, and ask that we approve the selection of Dr. Paul Stepanovich." The personnel committee then held a second round of voting, and eight of the thirteen votes were cast for Robert Page ("Page"), who the committee then recommended to Hein.  Hein also rejected that recommendation, and chose to instead appoint Stepanovich to the position.  Both Page and Stepanovich are white, Anglo-Saxon males.

In 2006 or 2007, one of Nodoushani's former students became the "Mayor" of North Haven.[2]  Nodoushani testified that the student "sent [him] a letter and thanked [him] for education and advising."  (Deposition of Omid Nodoushani 62:3-4) (Doc. No. 59)

---

[2]The town of North Haven has a Board of Selectmen but does <u>not</u> have a Mayor, but a First Selectman.  <u>See</u> Conn. State Register and Manual 525 (2007).

("Nodoushani Dep.")  Nodoushani sent three e-mail messages to the university's public relations department, but did not receive a reply.  Nodoushani contends that although SCSU's public relations office "ordinarily . . . would make a big deal about it," SCSU did not announce the student's success or her laudatory letter. (Id. 62:7.)

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury.  The court, therefore, may not try issues of fact.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975).  It is

-6-

well-established that "[c]redibility determinations, the weighing
of the evidence, and the drawing of legitimate inferences from
the facts are jury functions, not those of the judge." <u>Anderson</u>,
477 U.S. at 255.  Thus, the trial court's task is "carefully
limited to discerning whether there are any genuine issues of
material fact to be tried, not to deciding them.  Its duty, in
short, is confined . . . to issue-finding; it does not extend to
issue-resolution." <u>Gallo</u>, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be
resolved is both genuine and related to a material fact.
Therefore, the mere existence of <u>some</u> alleged factual dispute
between the parties will not defeat an otherwise properly
supported motion for summary judgment.  An issue is "genuine
. . . if the evidence is such that a reasonable jury could return
a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248
(internal quotation marks omitted).  A material fact is one that
would "affect the outcome of the suit under the governing law."
<u>Id.</u>  As the Court observed in <u>Anderson</u>: "[T]he materiality
determination rests on the substantive law, [and] it is the
substantive law's identification of which facts are critical and
which facts are irrelevant that governs." <u>Id.</u>  Thus, only those
facts that <u>must</u> be decided in order to resolve a claim or defense
will prevent summary judgment from being granted.  When
confronted with an asserted factual dispute, the court must

-7-

examine the elements of the claims and defenses at issue on the
motion to determine whether a resolution of that dispute could
affect the disposition of any of those claims or defenses.
Immaterial or minor facts will not prevent summary judgment.  See
Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary
judgment, the court must "assess the record in the light most
favorable to the non-movant and . . . draw all reasonable
inferences in its favor."  Weinstock v. Columbia Univ., 224 F.3d
33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v.
Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)).  Because
credibility is not an issue on summary judgment, the nonmovant's
evidence must be accepted as true for purposes of the motion.
Nonetheless, the inferences drawn in favor of the nonmovant must
be supported by the evidence.  "[M]ere speculation and conjecture
is insufficient to defeat a motion for summary judgment."  Stern
v. Trs. of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997)
(internal quotation marks omitted) (quoting W. World Ins. Co. v.
Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)).  Moreover,
the "mere existence of a scintilla of evidence in support of the
[nonmovant's] position will be insufficient; there must be
evidence on which [a] jury could reasonably find for the
[nonmovant]."  Anderson, 477 U.S. at 252.

Finally, the nonmoving party cannot simply rest on the

allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists.  See Celotex Corp., 477 U.S. at 324.  "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," Weinstock, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial."  Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)(quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact."  Weinstock, 224 F.3d at 41.  If the nonmovant fails to meet this burden, summary judgment should be granted.

## III. DISCUSSION

### A. Motion to Strike Plaintiff's Local Rule 56a(2) Statement

SCSU has moved to strike many statements in the plaintiff's Local Rule 56(a)(2) Statement.  SCSU properly notes that the plaintiff failed to comply with the requirement in Fed. R. Civ. P. 56(c) and D. Conn. L. Civ. R. 56a(3) that parties provide specific citations to admissible evidence.

In his Local Rule 56(a)(2) Statement, the plaintiff cites to

the complaint and to broad ranges of pages in the plaintiff's deposition testimony.  In many instances, the plaintiff cites to pages in the deposition testimony that simply provide no support for the plaintiff's contention.

Citations to the complaint are not admissible evidence and cannot be relied upon in opposing a motion for summary judgment.  See Newton v. City of N.Y., 640 F. Supp. 2d 426, 448 (S.D.N.Y. 2009) ("On summary judgment, the allegations in a complaint do not suffice to create a genuine issue of material fact[].  A complaint is not evidence, except insofar as it contains admissions."); Welch-Rubin v. Sandals Corp., No. 3:03CV481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) ("Plaintiffs cite their own Complaint as the sole support for certain assertions of fact in their Rule 56(a)2 Statement.  But as the Defendants rightly point out, allegations in a complaint are not evidence.").

To the extent that the plaintiff cites to wide ranges of pages within the transcript of his deposition, the plaintiff has not complied with Local Rule 56a(3), which provides:

> The "specific citation" obligation of the Local Rule requires counsel . . . to cite to specific pages when citing to documents longer than a single page in length.  Counsel . . . [is] hereby notified that failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming certain facts that are supported by the evidence admitted in accordance with Rule 56(a)1 or in the Court

> imposing sanctions, including, . . . when the
> opponent fails to comply, an order granting the
> motion if the undisputed facts show that the movant
> is entitled to judgment as a matter of law.

D. Conn. L. Civ. R. 56a(3).  Fed. R. Civ. P. 56 "does not impose
an obligation on a district court to provide an independent
review of the record to find proof of a factual dispute," and
"district courts are entitled to order litigants to provide
specific record citations."  <u>Amnesty Am. v. Town of W. Hartford</u>,
288 F.3d 467, 470 (2d Cir. 2002).

However, so as not to unduly penalize Nodoushani for his
counsel's failure to comply with the Local Rules, the court is
considering citations supported by accurate citations to a range
of up to 5 pages of deposition testimony.

Thus, the court will not consider purported factual
statements supported by only a citation to the complaint, a bare
citation to the plaintiff's deposition without page numbers, or a
citation to a range of page numbers in excess of five.  To the
extent that the defendant moves to strike statements in the
plaintiff's Local Rule 56(a)(2) Statement that fall into these
categories, the defendant's motion is being granted.

**B. <u>State Law Claims</u>**

The plaintiff contends that the defendant violated the CFEPA
and committed the tort of intentional infliction of emotional
distress.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "It has been long settled that the reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997) (citations omitted).

"This absolute bar of actions against the state has been greatly modified both by statutes effectively consenting to suit in some instances as well as by judicial decision in others." Doe v. Heintz, 204 Conn. 17, 31 (1987). "In the absence of legislative authority, however," the Supreme Court of Connecticut "ha[s] declined to permit any monetary award against the state or its officials." Id. at 32. See also Dube v. State Univ. of N.Y., 900 F.2d 587 (2d Cir. 1990) (holding that a § 1983 civil rights action against the State University of New York was barred by the Eleventh Amendment); Gaynor v. Martin, 77 F. Supp.2d 272, 282 (D. Conn. 1999) (dismissing state law claim for intentional infliction of emotional distress in a Title VII discrimination case as barred by the Eleventh Amendment).

-12-

In the absence of such legislative authority, and the court has not been made aware of any, the plaintiff's CFEPA claims and claim for intentional infliction of emotional distress are barred by sovereign immunity.  Accordingly, the defendant's motion for summary judgment is being granted with respect to the plaintiff's state law claims.

### C. **<u>Title VII Claims</u>**

Nodoushani contends that SCSU discriminated against him on the basis of his national origin, religion, or ethnicity in violation of Title VII.  Title VII provides that "[it] shall be unlawful for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Nodoushani also contends that SCSU retaliated against him in violation of Title VII, which states that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]."  <u>Id.</u> § 2000e-3(a).  Further, an employer is forbidden to "discriminate against any of his employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in a [Title VII] investigation, proceeding, or hearing."  <u>Id.</u>

The plaintiff's claims are either claims that are time-barred by the statute of limitations or claims as to which he fails to create a genuine issue of material fact as to discrimination or retaliation.[3] Therefore, the defendant's motion for summary judgment as to plaintiff's Title VII claims is being granted.

### 1. Time-Barred Claims

"Section 2000e-5(e)(1) requires that a Title VII plaintiff file a charge with the Equal Employment Opportunity Commission (EEOC) either 180 or 300 days after the alleged unlawful employment practice occurred." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 104-05 (2002) (citations omitted). "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days." Id. at 109.

Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory

---

[3]The plaintiff claims that the January 3, 2007 e-mail from Narumanchi to Hein comparing Nodoushani to Saddam Hussein was discriminatory and retaliatory. However, the plaintiff has provided no evidence or argument that the letter was an act of the defendant or that he has established the elements of a prima facie case of Title VII discrimination or retaliation based on the e-mail.

time period." Id. at 105. "A discrete retaliatory or
discriminatory act 'occurred' on the day that it 'happened.' A
party, therefore, must file a charge within either 180 or 300
days of the date of the act or lose the ability to recover for
it." Id. at 110. Furthermore, the Supreme Court has "repeatedly
interpreted the term 'practice' to apply to a discrete act or
single 'occurrence,' even when it has a connection to the other
acts." Id. at 111. "There is simply no indication that the term
'practice' converts related discrete acts into a single unlawful
practice for the purposes of timely filing." Id.

Nodoushani filed his complaint with the EEOC and the CHRO on
October 26, 2006. Three hundred days prior to October 26, 2006
was December 30, 2005. Therefore, claims predicated on the
discrete acts of alleged discrimination and retaliation that
occurred prior to this date are time-barred. Accordingly, the
defendant's motion for summary judgment is being granted with
respect to Title VII claims based on acts occurring prior to
December 30, 2005.

**2. Acts Occuring On or After December 30, 2005**

**a. Discrimination**

Nodoushani contends that SCSU took the following adverse
employment actions against him because of his national origin,
religion or ethnicity: 1) declined to either publicize a
laudatory letter sent by a student or publicize that student's

-15-

political success; 2) removed Nodoushani from his position as
Director of the MBA Program; and 3) declined to appoint him
chairperson of the Department of Management.  All other Title VII
violations alleged by the plaintiff are either unsupported by
proper citations to admissible evidence, barred by the statute of
limitations for Title VII claims, or both.

In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973),
the Supreme Court set forth the basic allocation of burdens and
order of presentation of proof in a Title VII case alleging
discriminatory treatment.  The Second Circuit has described the
three-part burden shifting framework of McDonnell Douglas as
follows:

> First, the plaintiff must establish a prima
> facie case of discrimination by showing that:
> (1) she is a member of a protected class; (2)
> she is qualified for her position; (3) she
> suffered an adverse employment action; and (4)
> the circumstances give rise to an inference of
> discrimination. . . . Even if the plaintiff
> succeeds in presenting a prima facie case, the
> defendant may rebut that showing by
> articulating a legitimate, non-discriminatory
> reason for the employment action. . . . For
> the case to continue, the plaintiff must then
> come forward with evidence that the
> defendant's proffered, non-discriminatory
> reason is a mere pretext for actual
> discrimination.

Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).

In order to establish a prima facie case of discrimination, a plaintiff must show that (1) he is a member of a protected class; (2) he is qualified for his position; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.  See McDonnell Douglas, 411 U.S. at 802; Weinstock, 224 F.3d at 42.  "A plaintiff's burden in establishing a prima facie case is de minimis."  Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 467 (2d Cir. 2001).

SCSU does not dispute that Nodoushani, an Iranian-born Muslim of Iranian descent, is a member of a protected class. Also, although SCSU disputes the quality of Nodoushani's work performance, there is evidence in the record that Nodoushani was performing his duties satisfactorily and was qualified for his position.  Therefore, the plaintiff has established the first two elements of a prima facie case of discrimination.

In order to establish the third element, plaintiff must show that he suffered an adverse employment action.  "Adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand."  Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999).  In contrast, "everyday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII."  Cunningham v. N.Y. State Dep't of Labor, No. 08-0992-cv, 2009 WL 1608518, at *2 (2d Cir. 2009).

-17-

Nodoushani contends that SCSU's failure to publicize a former student's laudatory letter to Nodoushani, and perhaps SCSU's failure to publicize that student's success, constitutes an adverse employment action under Title VII.  This allegation is an everyday grievance that does not, as a matter of law, amount to a materially adverse change in the terms or conditions of Nodoushani's employment.  Therefore, SCSU's inaction was not an adverse employment action and Nodoushani has failed to meet the de minimis burden of establishing a prima facie case with respect to this claim.

Nodoushani also contends that SCSU removed him from his position as Director of the MBA Program and refused to promote him to chairperson of the Department of Management.  "Adverse employment actions include both refusals to promote and demotions."  Mandell v. Cnty of Suffolk, 316 F.3d 368 (2d Cir. 2003).  Demotions can be "via a reduced wage, salary, or job title; a material loss of benefits; or significantly reduced responsibilities."  Miller v. Ethan Allen Global, Inc., 3:10-CV-1701, 2011 WL 3704806, at *3 (D. Conn. Aug. 23, 2011) (citing Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006).  Therefore, these claims are adverse employment actions that can help establish a prima facie case of discrimination.

In order to establish the fourth element of a prima facie case, a plaintiff must show that the adverse employment action

"occured under circumstances giving rise to an inference of discrimination." <u>Norville v. Staten Island Univ. Hosp.</u>, 196 F.3d 89, 95 (2d Cir. 2003).  "A plaintiff may raise such an inference by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 38-9 (2d Cir. 2000).  "To be 'similarly situated,' the individuals with whom [the plaintiff] attempts to compare [him]self must be similarly situated in all material respects." <u>Shumway v. United Parcel Serv., Inc.</u>, 118 F.3d 60, 64 (2d Cir. 1997).

In this case, the faculty senate adopted a new directorship policy which resulted in the re-advertisement of several administrative positions at SCSU.  In February 2008, Williams sent a memorandum to individuals in positions affected by the New Policy, informing them that their positions would be advertised in spring 2008 and that they could reapply for their positions. None of the other ten individuals affected by the New Policy were Muslim, born in Iran or of Iranian descent.

Nodoushani has offered no evidence from which a reasonable jury could conclude that SCSU enacted its new faculty policy under circumstances giving rise to an inference of discrimination.  He has offered only his own subjective beliefs and bare assertions that the defendant's conduct was motivated by

his national origin, religion and ethnicity.  As the Second
Circuit has cautioned, "a jury cannot infer discrimination from
thin air." Lizardo v. Denny's, Inc., 270 F.3d 94, 104 (2d Cir.
2001) (plaintiff had "done little more than cite to [his]
mistreatment and ask the court to conclude that it must have been
related to [his] race.").  Therefore, the plaintiff has also
failed to meet his de minimis burden in establishing a prima
facie case with respect to his removal as Director of the MBA
Program.

However, there is evidence with respect to SCSU's
appointment of another candidate as chairperson of the Department
of Management that could give rise to an inference of
discrimination for purposes of a prima facie case.  Although
Nodoushani received a majority vote of the personnel committee
and was recommended to Hein for the position of chairperson of
the Department of Management, Hein rejected the committee's
recommendation and instead appointed Paul Stepanovich, a white,
Anglo-Saxon male, to that position.

Once a plaintiff has established a prima facie case of
discrimination, "the burden shifts to the defendant to articulate
a non-discriminatory, legitimate business reason for the alleged
discriminatory action." Song v. Ives Labs., Inc., 957 F.2d 1041,
1045 (2d Cir. 1995).  To satisfy this burden, "the employer need
only produce admissible evidence which would allow the trier of

fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 257 (1981).

In this case, SCSU claims that it refused to promote Nodoushani to chair of the Department of Management because Hein exercised his discretion to appoint the person he preferred over any other candidate.  Significantly, Hein also rejected the committee's recommendation of a white, Anglo-Saxon professor, Robert Page.  Because Hein had the discretion to appoint his preferred candidate as department chairperson, and Hein rejected both Nodoushani and a white candidate who was similarly endorsed by the faculty, there is evidence that SCSU's refusal to promote Nodoushani was not motivated by discriminatory animus.

When a defendant provides a non-discriminatory, legitimate business reason for an adverse employment action in a Title VII case, the burden shifts back to the plaintiff to "come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 42 (2d Cir. 2000).  When considering a motion for summary judgment, courts rule in favor of the defendant at the pretext stage only when the plaintiff has "provided no indication that any evidence exists that would permit the trier of fact to draw a reasonable inference of

pretext." <u>Meiri v. Dacon</u>, 759 F.2d 989, 997 (2d Cir. 1985).
This is such a case.

Nodoushani has failed to produce any evidence that could
establish that Hein's discretionary appointment of Stepanovich
was a pretext for discrimination.  Nodoushani has offered no
evidence tending to show that the reason provided by SCSU is
false.  Nor has he offered any evidence suggesting that SCSU's
treatment of him differed from that accorded other non-Muslim or
non-Iranian employees, particularly Robert Page.  Page also
received eight out of thirteen votes of the faculty personnel
committee, and was nominated by that committee's chair for the
same position.  The faculy's recommendation as to Page, as with
Nodoushani, was rejected by Hein.

Thus, there is no genuine issue of material fact as to
whether SCSU discriminated against Nodoushani.  Accordingly, the
defendant's motion for summary judgment with respect to the
plaintiff's surviving Title VII discrimination claims is being
granted.

### b. Retaliation

Nodoushani also contends that SCSU retaliated against him in
response to one or more of several complaints he filed during his
employment at the University when it: 1) declined to either
publicize a laudatory letter sent by a student or publicize that
student's political success; 2) removed Nodoushani from his

position as Director of the MBA Program; and 3) declined to appoint him chairperson of the Department of Management.

As with the discrimination claims, under Title VII the plaintiff has the initial obligation to establish a prima facie case of retaliation.  In order to meet this step, the plaintiff must show "(1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action."  Booth v. Connecticut, No. 3:09cv2131, 2011 WL 3611352, at *5 (D.Conn. Aug. 17, 2011) (citing Kaytor v. Elec. Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010).

Nodoushani does not specify which complaint constitutes "protected activity" under Title VII.  However, the plaintiff potentially engaged in a protected activity when filing a complaint with the EEOC and CHRO on October 15, 2006 and when filing an internal discrimination complaint with SCSU on January 26, 2007.[4]  SCSU does not dispute that it was aware of these complaints prior to the alleged retaliatory actions.

With regard to the third element of a prima facie case of retaliation, the court notes that "[t]he definition of adverse

---

[4]Although the plaintiff filed earlier complaints against particular officials at SCSU, these complaints are too remote in time from the relevant employment actions to satisfy the requirements for a retaliation claim.

employment action for Title VII retaliation claims is quite different" than the definition of adverse employment action for Title VII discrimination claims.  O'Neill v. City of Bridgeport Police Dep't, 719 F. Supp. 2d 219, 229 (D. Conn. 2010).  The Supreme Court's opinion in Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), expanded the definition of "adverse employment action" for purposes of Title VII retaliation claims.  Now, a Title VII plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  White, 548 U.S. at 68 (internal citations omitted).  See Hicks v. Baines, 593 F.3d 159 (2d Cir. 2010) ("White broadened the scope of Title VII's anti-retaliation provision. No longer must the alleged retaliatory act bear on the terms or conditions of employment . . .").

Nodoushani alleges that SCSU retaliated against him by not "mak[ing] a big deal" when a former student sent him a letter thanking him in 2006 or 2007.  Although the definition of "adverse employment action" is broader in the retaliation context, "'petty slights or minor annoyances' are not sufficiently material to amount to an adverse employment action even in the context of a retaliation claim."  O'Neill, 719 F. Supp. 2d at 229 (citing White, 548 U.S. at 68).  SCSU's refusal

to publicize a letter from a former student praising Nodoushani, or to publicize that student's success in general, does not constitute an adverse employment action and cannot support a retaliation claim.  Drawing all inferences in his favor, Nodoushani has provided no evidence that SCSU's actions might have dissuaded him from pursuing his discrimination claim.  He has failed to establish a <u>prima facie</u> case of retaliation with respect to this claim.

The plaintiff also points to SCSU's refusal to appoint him chair of the Department of Management or Director of the MBA Program as constituting adverse employment actions.  However, the plaintiff has failed to produce any evidence that could show a causal connection between these actions and the plaintiff's EEOC/CHRO complaint or internal discrimination complaint.

A plaintiff can establish a causal connection between the protected activity and the adverse employment action "(i) indirectly by showing that the adverse employment action followed closely in time after the protected activity, (ii) through other indirect evidence such as similar treatment of other employees who engaged in similar activity, or (iii) directly through evidence of retaliatory animus directed at the plaintiff." <u>Foster-Bey v. Potter</u>, 296 F.Supp.2d 195 (D.Conn. 2003), citing <u>Monahan v. United Techs. Corp., Pratt & Whitney Div.</u>, 113 F.3d 1229 (2d Cir. 1997).

Nodoushani makes none of these showings. He provides neither direct evidence that SCSU retaliated against him because of his EEOC/CHRO complaint or internal complaint, nor indirect evidence that SCSU treated other employees who engaged in similar activity in a different fashion.  On the other hand, SCSU has provided the names of seven other directors who were affected by the faculty's new directorship policy.  Also, although Hein did not appoint Nodoushani as chair of the Department of Management, Hein also rejected a white, Anglo-Saxon male for the same position under the same circumstances.

In the absence of any other evidence, "[p]roof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d 590, 598 (2d Cir. 1988).  But as the Supreme Court has observed, "[t]he cases that accept mere temporal proximity . . . as sufficient evidence of causality to establish a prima facie case [of retaliation] uniformly hold that temporal prixmity must be 'very close.'"  Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268. 273 (2001) (citing with approval decision holding three month interval too long to permit inference).

The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the execise

-26-

of a federal constitutional right and an allegedly retaliatory action," Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty, 252 F.3d 545 (2d Cir. 2001), but "the weight of authority supports the view that twelve months is too long." Morisseau v. DLA Piper, 532 F.Supp.2d 595, 617 (S.D.N.Y. 2008) (citations omitted). See, e.g., Hollander v. Am. Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990) (3 1/2 months too long); Garrett v. Garden City Hotel, Inc., No. 05-CV-0962, 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) (more than 2 months too long); Sussle v. Sirina Protection Sys. Corp., 269 F.Supp.2d 285, 316-17 (S.D.N.Y. 2003) (4 months or even less too long). Compare Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998) (2 months sufficient to establish causation).

Furthermore, "mere temporal proximity–even close temporal proximity–is not always sufficient to support an inference that the plaintiff's protected activity was a motivating factor in the defendant's adverse employment action." Smith v. Da Ros, 777 F.Supp.2d 340, 357 (D. Conn. 2011); see also Anemone v. Metro. Transp. Auth., 629 F.3d 97 (2d Cir. 2011) (finding "no indication" that the plaintiff's testimony before the New York State Assembly on April 11, 2003 "played any role in the decision to terminate [the plaintiff]" less than a month later, on May 8, 2003).

In this case, SCSU's faculty senate voted to change the directorship policy in January 2008, almost one year after Nodoushani filed his internal discrimination complaint on January 26, 2007 and 15 months after he filed his EEOC/CHRO complaint. Hein chose Stepanovich instead of Nodoushani as chairperson of the Department of Management in the spring of 2009, over two years after Nodoushani filed these complaints.  Thus, the plaintiff has not offered admissible evidence of "very close" temporal proximity between the protected activity and an adverse employment action.

The defendant is therefore entitled to summary judgment on plaintiff's retaliation claims because plaintiff has not established a <u>prima</u> <u>facie</u> case of Title VII retaliation.

**IV.  CONCLUSION**

For the reasons set forth above, defendant SCSU's motion to strike (Doc. No. 55) is hereby GRANTED in part and DENIED in part and its Motion for Summary Judgment (Doc. No. 55) is hereby GRANTED.

The Clerk shall enter judgment in favor of the defendant and close this case.

It is so ordered.

Dated this 29th day of September, 2011, at Hartford, Connecticut.

                              _____/s/_____
                                      Alvin W. Thompson
                              United States District Judge